# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | | |
|---|---|---|
| RICHARD M. VILLARREAL, | : | |
| ON BEHALF OF HIMSELF AND | : | |
| ALL OTHERS SIMILARLY | : | |
| SITUATED, | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | 2:12-CV-0138-RWS |
| | : | |
| v. | : | |
| | : | (Collective Action) |
| R.J. REYNOLDS TOBACCO | : | |
| COMPANY, PINSTRIPE, INC., | : | |
| AND CAREERBUILDER, LLC, | : | |
| | : | |
| Defendants. | : | |

## ORDER

This case comes before the Court on Defendants R.J. Reynolds' and

Pinstripe, Inc.'s Partial Motion to Dismiss [24], Plaintiff's Motion for Oral

Hearing on Partial Motion to Dismiss [46], and Plaintiff's Motion for Approval

of *Hoffman La-Roche* Notice [50] .  After reviewing the record, the Court enters

the following Order.

## Background

Since at least September 1, 2007, R.J. Reynolds ("RJR"), with the

assistance of the other Defendants, has actively recruited and hired individuals

to fill Territory Manager positions.[1]  Territory Managers are assigned to specific geographic areas and are responsible for working with traditional and non-traditional retailers in their area to increase sales of RJR tobacco products and to build RJR's brands.  Territory Managers also market RJR products directly to consumers through "one-to-one" engagements designed to convert consumers to RJR tobacco products.

On November 8, 2007, Mr. Villarreal applied for a Territory Manager position with RJR.  Mr. Villarreal learned of the vacancy on a website maintained by CareerBuilder, which directed him to a website maintained by RJR.  Mr. Villarreal completed a questionnaire on the website, uploaded his resume, and submitted his application.  He also indicated his desire to be notified of future job openings that matched his website profile.  At the time, Mr. Villarreal was 49 years old and was residing in Cumming, Georgia.  Mr. Villarreal was never contacted by any of the Defendants regarding his application and was never offered a Territory Manager position.

---

[1] Unless otherwise noted, the facts are taken from the Complaint [1].  At the motion to dismiss stage, all well-pleaded facts in the Complaint are accepted as true.  Cooper v. Pate, 378 U.S. 546, 546 (1964).

2

Kelly Services, Inc., a recruiting and staffing company and employment agency, through its subdivision Kelly HRFirst, assisted RJR in recruiting and screening applications for the Territory Manager positions in 2007 and 2008, and was doing so when Mr. Villarreal first applied for that position. Kelly Services screened all of the applications for Territory Manager positions during that time period, including Mr. Villarreal's application, and determined which applicants should be rejected based on their resumes alone and which applicants should be interviewed by RJR.

Kelly Services used "resume review guidelines" [1-1] provided by RJR to screen applications. The guidelines include "what to look for on a resume," "targeted candidate" guidelines, and "stay away from" guidelines. The "targeted candidate" guidelines include, among other factors, "2-3 years out of college" and "adjusts easily to changes." Under the "stay away from" category, the guidelines include "in sales for 8-10 years." Kelly Services applied RJR's guidelines when reviewing Mr. Villarreal's November 8, 2007 application. Mr. Villarreal had over 8 years of sales experience and had been out of college much longer than 3 years. His application was rejected. Kelly Services

3

forwarded the applications of substantially younger individuals to RJR for further consideration.

In June 2010, after receiving an email from RJR soliciting applications for Territory Manager positions, Mr. Villarreal applied again.  Mr. Villarreal was 52 years old at the time of his second application.  Less than one week after applying, Mr. Villarreal received an email from RJR stating that his application had been rejected and RJR was pursuing other individuals for the Territory Manager position.  Ultimately, RJR hired substantially younger individuals for the position.

Mr. Villarreal applied for the Territory Manager position again in December 2010, May 2011, September 2011, and March 2012.  Each time, RJR hired individuals under the age of 40 to fill the position.  Defendant Pinstripe has assisted RJR in recruiting and screening applications for the Territory Manager position from at least April 2009 through the present, and was doing so when Mr. Villarreal applied in 2010, 2011, and 2012.  Like Kelly Services before it, Pinstripe determined which applicants should be rejected based on their resumes and which candidates should be interviewed by RJR.  Pinstripe

used resume review guidelines from RJR (identical or almost identical to those used by Kelly Services) to screen applicants.

In addition to the resume review guidelines, RJR and Pinstripe developed a candidate profile that identified the characteristics RJR preferred in Territory Manager candidates [1-2].  The profile labeled the ideal candidate as the "Blue Chip TM."  The profile was created by surveying recent hires who were nominated by management as ideal new hires.  The profile stated that 67% of Blue Chip TMs had no prior experience or 1-2 years of work experience, while only 9% had six or more years of experience.

From at least September 2007 through the time the Complaint was filed, RJR almost exclusively hired individuals under age 40 for the position of Territory Manager.  Between September 1, 2007 and July 10, 2010, RJR hired 1,024 people to fill Territory Manager positions; only 19 of those hires (1.85%) were over 40.  Mr. Villarreal maintains that this hiring disparity was caused by RJR's discriminatory practices, not by any unique characteristics of the Territory Manager position or the applicant pool.  The 2000 Census reported that more than 54% of individuals occupying outside sales representative positions like the Territory Manager position are over the age of 40.  Of the

5

applications for RJR's Territory Manager position screened by Kelly Services between September 2007 and March 2008, approximately 48% (9,100 of 19,086) were from individuals with 8 or more years of sales experience. Yet Kelly Services, employing RJR's guidelines, only referred 15% of that group to RJR for further consideration, compared to 35% of individuals with less experience. Similarly, of the applications screened by Pinstripe between February 2010 through July 2010, more than 49% (12,727 of 25,729) were from individuals with over 10 years of sales experience, but only 7.7% of those were forwarded to RJR. Pinstripe forwarded 45% of candidates with only 1-3 years of sales experience.

Defendants Pinstripe and CareerBuilder assisted RJR in recruiting and hiring for the Territory Manager position. Mr. Villarreal alleges that these Defendants were aware of RJR's policy of hiring only individuals under the age of 40 for the position, and that they applied this policy while screening applicants. Mr. Villarreal argues that these Defendants acted as agents of RJR when they assisted RJR with recruiting, screening, and hiring.

On May 17, 2010, Mr. Villarreal filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that RJR

AO 72A
(Rev.8/82)

discriminated against him on the basis of age in rejecting his November 8, 2007 application.  Mr. Villarreal says he did not file his charge before 2010 because he did not have reason to believe that his 2007 application had been rejected because of his age until just before he filed his charge.  He claims that the facts necessary to support his charge of discrimination were not apparent to him, and could not have been apparent to him, until less than a month before he filed the charge.

In July 2010, Mr. Villarreal filed an amended charge with the EEOC that included both his 2007 rejection and his June 2010 rejection.  In December 2011, Mr. Villarreal filed another amended charge that included his rejections in December 2010, May 2011, and September 2011, and added, among others, Pinstripe and CareerBuilder as Respondents.  On April 2, 2012, the EEOC issued Notices of Right to Sue letters in charges 435-2012-00211 (Pinstripe charge), 435-2012-00212 (CareerBuilder charge), and 410-2010-04714 (original charge against RJR) [1-4].

Mr. Villarreal brings this action for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*., as a collective action

7

pursuant to 29 U.S.C. § 626(b), (c), and 29 U.S.C. § 216(b).  He brings the

action on behalf of:

> all applicants for the Territory manager position who
> applied for the position since the date RJ Reynolds
> began its pattern or practice of discriminating against
> applicants over the age of 40 (which Plaintiff is
> informed and believes was no later than September 1,
> 2007, and possibly earlier); who were 40 years of age
> or older at the time of their application; and who were
> rejected for the position (the "ADEA Collective
> Action Members").

Mr. Villarreal, on behalf of himself and all others similarly situated,

claims that Defendants engaged in an unlawful pattern or practice of intentional

age discrimination (disparate treatment) in violation of the ADEA (Count I) and

unlawful use of hiring criteria having disparate impact on applicants over 40

years of age in violation of the ADEA (Count II).  Mr. Villarreal seeks: (1) a

declaratory judgment that the practices complained of are unlawful and violate

the ADEA; (2) a permanent injunction against Defendants prohibiting them

from engaging in unlawful age discrimination in recruiting, screening, and

hiring applicants for the Territory Manager Position; (3) a permanent injunction

requiring that RJR institute and carry out policies, practices, and programs that

provide equal employment opportunities for all job applicants regardless of age,

AO 72A
(Rev.8/82)

and that eradicate the effects of its past and present unlawful employment practices; (4) back pay and front pay (including interest and benefits) for all ADEA Collective Action Members who join this action; (5) liquidated damages for all ADEA Collective Action Members who join this action; (6) reasonable attorneys' fees and expenses and costs of litigation; (7) pre-judgment interest, in the event liquidated damages are not awarded; and (8) such other and further legal and equitable relief as the Court deems necessary, just, and proper.

## Discussion

### I.   Motion to Dismiss - Legal Standard

As an initial matter, the Court finds that the Parties have adequately briefed the issues before the Court such that oral argument is not necessary. Therefore, Plaintiff's Motion for Oral Hearing on Motion for Partial Motion to Dismiss [46] is **DENIED**.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the

9

elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  <u>Id.</u>

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing <u>Iqbal</u>, 129 S. Ct. at 1949).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

"The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." D.L. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); see also Fed. R. Civ. P. 12(d).  However, documents attached to a complaint are considered part of the complaint.  Fed. R. Civ. P. 10(c).  Documents "need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document," provided it is central to the plaintiff's claim.  D.L. Day, 400 F.3d at 1276.  At the motion to dismiss phase, the Court may also consider "a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed."  Id. (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).  "'Undisputed' means that the authenticity of the document is not challenged."  Id.

## II.    Analysis

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Defendants RJR and Pinstripe, Inc. move to dismiss Count Two of the complaint and all time-barred claims [24].  Defendants argue that the ADEA

11

does not authorize Plaintiff's disparate impact claim (Count II), and that all claims that arose before November 19, 2009 are time-barred.

### A.      Plaintiff's Disparate Impact Hiring Claim (Count II)

Defendants argue that disparate impact claims are available only under § 4(a)(2) of the ADEA, 29 U.S.C. § 623(a)(2).[2]  (Memorandum in Support of Defendants R.J. Reynolds Tobacco Company's and Pinstripe's Partial Motion to Dismiss ("Def.s' MTD Br."), Dkt. [24-1] at 4.)  That section, however, is limited to "employees" and does not encompass hiring claims.  (Id.)  Therefore, Plaintiff's disparate impact failure-to-hire claim (Count II) should be dismissed for failure to state a claim upon which relief may be granted.  (Id.)  The Court agrees with Defendants.

In <u>Smith v. City of Jackson</u>, 544 U.S. 228 (2005), the Supreme Court resolved a long-standing circuit split and held that the ADEA does authorize disparate impact cases.  However, those claims are limited to § 4(a)(2).  The

---

[2] Section 4(a)(1), 29 U.S.C. § 623(a)(1), makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  Section 4(a)(2), 29 U.S.C. § 623(a)(2), makes it unlawful for an employer "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."

12

Court explained, there are "key textual differences between § 4(a)(1), which does not encompass disparate-impact liability, and § 4(a)(2)." <u>Smith</u>, 544 U.S. at 236 n.6.  Unlike § 4(a)(1), which focuses on employers' actions toward targeted individuals, "the text [of § 4(a)(2)] focuses on the *effects* of the action on the employee rather than the motivation for the action of the employer." <u>Id.</u> at 236; <u>see also</u> <u>id.</u> at 249 ("Neither petitioners nor the plurality contend that the first paragraph, § 4(a)(1), authorizes disparate impact claims, and I think it obvious that it does not.") (O'Connor, J., concurring).

There is another important textual difference between § 4(a)(1) and § 4(a)(2) of the ADEA.  Unlike § 4(a)(1), § 4(a)(2) does not mention hiring or prospective employees.  In fact, § 4(a)(2) is limited to employees' claims.  <u>See</u> <u>Smith</u>, 544 U.S. at 266 ("Section 4(a)(2), of course, does not apply to 'applicants for employment' at all – it is only § 4(a)(1) that protects this group.") (O'Connor, J., concurring); <u>see also</u> <u>Smith v. City of Des Moines, Iowa</u>, 99 F.3d 1466, 1470 n.2 (8th Cir. 1996) ("Section [4(a)(2)] of the ADEA governs employer conduct with respect to 'employees' only, while the parallel provision of Title VII protects 'employees or applicants for employment.'").

AO 72A
(Rev.8/82)

Despite the Supreme Court's findings in <u>Smith</u>, Plaintiff argues that disparate impact claims are available to prospective employees under § 4(a)(2). (Plaintiff's Opposition to Defendants' Partial Motion to Dismiss ("Pl.'s Opp. Br."), Dkt. [40] at 7-9.)  Plaintiff relies on <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424 (1971).  However, <u>Griggs</u> is not controlling here.  <u>Griggs</u> was a Title VII case involving current employees.  The Court's decision in <u>Smith</u>, which includes a lengthy discussion of <u>Griggs</u>, settled this issue under the ADEA.

Furthermore, <u>Griggs</u> pre-dated significant amendments to Title VII – amendments notably absent from the ADEA.  As originally enacted, "[e]xcept for the substitution of the word 'age' for the words 'race, color, religion, sex, or national origin,' the language of [§ 4(a)(2)] in the ADEA [was] identical to that found in § 703(a)(2) of the Civil Rights Act of 1964 (Title VII)."  <u>Smith</u>, 544 U.S. at 33.  Then, in 1972, Congress amended § 703(a)(2) of Title VII to include "employees *or applicants for employment*" (emphasis added).  But Congress did not amend § 4(a)(2) of the ADEA to include applicants.

As the Supreme Court recognized in <u>Gross v. FBL Fin. Serv.s</u>, 557 U.S. 167, 174 (2009), a case involving different parallel Title VII-ADEA provisions, "[w]hen Congress amends one statutory provision but not another, it is

14

presumed to have acted intentionally."  The Court explained, "[w]e cannot

ignore Congress' decision to amend Title VII's relevant provisions but not

make similar changes to the ADEA."  Id.  The same rationale applies here.  This

Court presumes that Congress acted intentionally when it expanded the scope of

§ 703(a)(2) to include applicants and did not do the same with § 4(a)(2) of the

ADEA.

Based on the foregoing, the Court agrees with Defendants that disparate

impact failure-to-hire claims are not authorized under § 4(a)(2) of the ADEA.

Therefore, Defendants' motion to dismiss Count II of Plaintiff's Complaint is

**GRANTED.**

### B.    Time-Barred Claims

Defendants argue that all claims related to hiring decisions before

November 19, 2009 are time-barred under 29 U.S.C. § 626(d)(1)-(A).[3]  (Def.s'

MTD Br., Dkt. [24-1] at 9-17.)  Additionally, they argue, the charge-filing

---

[3] The provision provides that before a plaintiff files an ADEA lawsuit, he shall file a charge with the EEOC alleging unlawful discrimination within 180 days after the alleged unlawful practice occurred.  Under 29 U.S.C. §§ 626(d)(1)(B) & 633(b), if a state has a "law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice," the 180-day charge-filing period is extended to 300 days. Georgia does not have an age discrimination law, so the 180-day period applies in this jurisdiction.

period operates as a statute of limitations for any opt-in plaintiffs who join this collective action.[4]  Finally, Defendants argue that Plaintiff's time-barred claims cannot be saved by the continuing violations doctrine or equitable tolling.  They maintain that the continuing violations doctrine does not apply here because discrete incidents of discrimination (e.g., refusal to hire at issue here) cannot amount to a continuing violation.  Further, they argue that Plaintiff has not pled sufficient facts to invoke equitable tolling.

Plaintiff responds that the period of limitation for filing his EEOC charge challenging his 2007 rejection was equitably tolled until less than a month before the charge was filed.  (Pl.'s Opp. Br., Dkt. [40] at 15-19.)  He also claims that because he is challenging a longstanding pattern or practice of discrimination by Defendants, he may challenge all applications of that discriminatory policy, regardless of when they occurred.  (Id. 19-22.)  The Court agrees with Defendants.

The parties do not dispute that § 626(d)(1)-(A)'s 180-day limitation period applies to Plaintiff Villarreal or that his 2007 rejection falls outside that

---

[4] Defendants note that the 180-day rule applies to Plaintiff Villarreal, but if additional individuals join the lawsuit, each individual's place of residence will determine whether the limitations period is 180 days or 300 days.

AO 72A
(Rev.8/82)

period.  The parties also do not dispute that this period operates as a statute of

limitations for opt-in plaintiffs.  See Hipp v. Liberty Nat'l Life Ins. Co., 252

F.3d 1208, 1220 (11th Cir. 2001) (holding "the rearward scope of an ADEA

opt-in action should be limited to those plaintiffs who allege discriminatory

treatment within 180 or 300 days before the representative charge is filed").

Therefore, the Court must determine whether equitable tolling or the continuing

violations doctrine apply here.

1.    Equitable Tolling

"The requirement that a claimant file a timely charge of discrimination

with the EEOC is not a jurisdictional prerequisite to sue in federal court, but a

requirement that, like a statute of limitations, is subject to waiver, estoppel, and

equitable tolling."  Sturniolo v. Sheaffer, Eaton, Inc., 15 F.3d 1023, 1025 (11th

Cir. 1994) (internal quotations omitted).  But "[e]quitable tolling is a remedy

that must be used sparingly."  Downs v. McNeil, 520 F.3d 1311, 1318 (11th

Cir. 2008).  In this circuit, "equitable tolling of the limitations period is

warranted when a movant untimely files because of extraordinary

circumstances that are both beyond his control and unavoidable even with

diligence."  Id. at 1319 (internal quotations omitted); see also Bond v. Roche,

17

2006 WL 50624, at *1-2 (M.D. Ga. Jan. 9, 2006) (a plaintiff has the burden to "show good cause for tolling the limitations period").

Defendants contend that Plaintiff has not alleged any extraordinary circumstances that were beyond his control or shown good cause to support tolling the limitations period. Instead, the Complaint states that Plaintiff did not file his initial charge with the EEOC before 2010 because "he did not become aware until shortly before filing the charge that there was reason to believe that his 2007 application . . . had been rejected on account of his age." (Complaint, Dkt. [1] ¶ 28.) According to the Complaint, "[t]he facts necessary to support [Plaintiff's] charge of discrimination were not apparent to him, and could not have been apparent to him until less than a month before he filed his May 17, 2010 EEOC charge." (Id.) The Complaint does not specify which facts Plaintiff came to know in 2010, or how Plaintiff came to know them.

The Court finds that Plaintiff has not met his burden regarding tolling of the limitations period. "Under equitable modification, a limitations period does not start to run until the facts which would support a charge of discrimination are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Sturniolo, 15 F.3d at 1025. Here, without knowing which facts

18

alerted Plaintiff to his discrimination claim or how he learned those facts, the Court cannot determine whether or when those facts should have become apparent to a reasonably prudent person.

This case is analogous to Bond, 2006 WL 50624, at *2, where the plaintiff alleged that he did not have reason to believe he had a discrimination claim until "a conversation with a third party who had inside knowledge of [the employer's] history of racial discrimination through covert and subtle means." The court found these allegations insufficient to show that the limitations period should be tolled. "In the absence of any detail as to the new facts confided by this mysterious informant, the Court has no way to determine whether those facts should or should not have been apparent to a person with a reasonably prudent regard for his rights." Id.[5]

Therefore, the Court finds that Plaintiff's untimely claims are not saved by equitable tolling.

---

[5] Plaintiff has not alleged that Defendants took any action to prevent him from asserting his claim or that they engaged in any wrongful concealment of facts. Therefore, the line of cases applicable to those scenarios are not relevant here.

19

2.	Continuing Violations Doctrine

"The proper focus for when a statute of limitations begins to run is the time of the discriminatory act." Jones, 331 F.3d at 1263.  Defendants argue that Plaintiff's failure-to-hire claims accrued at precise points in time – when he and other potential applicants learned that their applications for Territory Manager positions were unsuccessful.  (Def.s' MTD Br., Dkt. [24-1] at 13.)  Plaintiff, on the other hand, argues that Defendants' longstanding policy of discrimination was enforced within the limitations period, and therefore, Plaintiff's challenge "may properly encompass discriminatory actions taken outside that period pursuant to the challenged policy."  (Pl.'s Opp. Br., Dkt. [40] at 20.)

The Supreme Court's decision in Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), is instructive here.  In that case, the Court considered whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside the statutory time period.[6]  The Supreme Court found that "the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." Morgan, 536 U.S. at 105.  Furthermore, "discrete discriminatory acts are not actionable if time

_____

[6] Morgan involved the continuing violations doctrine and Title VII's charge-filing limitation provision, which mirrors the one in the ADEA.

20

barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  Id. at 113.

The Court explained, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or *refusal to hire* are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  Id. at 114 (emphasis added).  In these instances, "only incidents that took place within the timely filing period are actionable."  Id.  By contrast, hostile environment claims "are different in kind from discrete acts.  Their very nature involves repeated conduct."  Id. at 115.  "Such claims are based on the cumulative effect of individual acts."  Id.  In those cases, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."  Id. at 105.

The Court finds that Plaintiff's failure-to-hire claim clearly falls under the rule for discrete acts.  Therefore, only those incidents that took place within

21

the limitation period (180 or 300 days before Plaintiff's initial charge was filed with the EEOC) are actionable, and Defendants' motion to dismiss all time-barred claims is **GRANTED**.

## Conclusion

Based on the foregoing, Defendants' Partial Motion to Dismiss [24] is **GRANTED** and Plaintiff's Motion for Oral Hearing on Partial Motion to Dismiss [46] is **DENIED**.  In light of these rulings, Plaintiff's Motion for Approval of *Hoffman La-Roche* Notice [50] is **DENIED**, with the right to re-file requesting notice consistent with the foregoing rulings.

**SO ORDERED**, this  6th  day of March, 2013.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)